UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THURSTON BRENT McAFEE, | No. C 09-2497 MHP (pr) |
| Plaintiff, | **ORDER OF SERVICE** |
| v. | |
| BEN CURRY; et al., | |
| Defendants. | |

## INTRODUCTION

Thurston Brent McAfee, an inmate at Ironwood State Prison, filed this pro se civil rights action under 42 U.S.C. § 1983. His complaint is now before the court for review pursuant to 28 U.S.C. §1915A.

## BACKGROUND

The acts and omissions giving rise to the claims in this action occurred while McAfee was incarcerated at the Correctional Training Facility in Soledad. McAfee alleges the following:

McAfee was attacked by Southern Hispanic inmates during one of several riots that broke out among inmates at CTF-Soledad on May 30, 2008, and suffered a "severe gash" on his head. Complaint, p. 4. At the time the rioting broke out, he was working as a clerk in the culinary department and was on crutches. He and other inmates were first secured in the kitchen, and then compelled by correctional officers to go to other particular areas. McAfee asked correctional officer Hill if he could remain at his work station because he had just had

surgery and could not walk without crutches. C/O Hill denied the request, and stated that sergeant Days wanted all inmates into the halls. After McAfee moved pursuant to this order to a less safe place, he was attacked by Southern Hispanic inmates and suffered the head injury.

McAfee attributes his injuries in the inmate attack to correctional officers' refusal to allow him to stay put in his work area when they were moving inmates. McAfee, who is Black, alleges that correctional officials Days, Hill and Ingraham ordered him into an area "with Southern Hispanic inmates with the knowledge that Southern inmates were attacking Black inmates in two separate areas, ignoring plaintiff's request to be secured in a separate area due to being unable to walk, that defendant's knew plaintiff had undergone knee surgery two days prior." Complaint, p. 6. He also alleges that the "defendants knew Southern Hispanic inmates were under perpetual orders to attack as a group," that Southern Hispanic inmates were grouping when McAfee was ordered to the risky area, and that Southern Hispanic inmates had been allowed into the kitchen to obtain kitchen tools to use as weapons. Id.

On June 9, 2008, sergeant Verdesoto issued a rules violation report charging McAfee with participation in a riot. Sergeant Verdesoto falsely stated in his report that McAfee was out in Lassen Hall during the riot and was a participant, relying on the medical report for this information. Sergeant Sevey and lieutenant Truett "blindly signed the report written by Verdesoto." Id. at 7.

On July 1, 2008, a disciplinary hearing was held on the rules violation report. McAfee pled not guilty to the charge of participating in a riot. He was denied his requested witness by the hearing officer, lieutenant J. Rivero. McAfee alleges in one place that hearing officer Rivero did not review the medical report and the incident report but alleges in another place that Rivero did review them. Compare id. at 7 with id. at 8. Liberally construed, McAfee's allegations that he was found guilty "in spite of the information to the contrary," id. at 8, appears to be a claim that the evidence was insufficient to support the decision. McAfee was found guilty of violating § 3005(c) and was assessed 90 days credit

1 forfeiture, 90 days on privilege group C and was later given a 90-day SHU term. He spent
2 204 days in the SHU and then was transferred to another prison on December 24, 2008.
3 Although McAfee's inmate appeal was denied at the warden's level, it was granted at the
4 director's level. The guilty verdict was overturned and the institution was ordered to "restore
5 all penalties assessed as a result of the finding of guilt." Complaint, Exh. H, p. 2.

6 In addition to the alleged primary wrongdoers, McAfee attempts to bring in as defendants several people higher up in the organizational structure or only secondarily involved in the events. For example, McAfee alleges that defendant Tucker and Collie, who signed off on the rule violation report decision, knew or should have known that he was not guilty of the charges. He also alleges that warden Curry refused to overturn the disciplinary decision despite his knowledge of the due process violation and "with full knowledge of what was going on in his prison." Id. at 8. McAfee also makes the conclusory allegations of a massive cover-up, with each actor covering up previous misconduct as well as that he had been the victim of a hate crime by Southern Hispanics. That is, he contends that (1) the rule violation report was issued to cover up the misconduct of prison officials that caused McAfee to suffer the head injury; (2) that he was found guilty of the disciplinary offense to cover up the misconduct of the prison officials that caused him to be charged with a disciplinary offense and caused him to suffer the head injury; and (3) that the disciplinary finding was upheld to cover up the misconduct of the prison officials that caused him to be found guilty, that caused him to be charged with a disciplinary offense, and that caused him to suffer the head injury.

**DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. §1915A(a). The court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §1915A(b)(1),(2).

3

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

A.  Eighth Amendment Claim

The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials take reasonable measures for the safety of inmates. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). In particular, officials have a duty to protect inmates from violence at the hands of other inmates. See id. at 833. A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety. See id. at 834. To be liable in a failure to prevent harm situation, the official must know of and disregard an excessive risk to inmate safety. See id. at 837.

Liberally construed, the complaint states a § 1983 claim against defendants Days, Hill and Ingraham for their alleged activities that McAfee contends amounted to deliberate indifference to a risk to his safety. These defendants allegedly refused to allow McAfee to remain in a position of safety and compelled him (a Black inmate) to go to a place where the danger was greater and a racial disturbance was occurring between Black and Southern Hispanic inmates, with the latter group being the attackers. The complaint does not state a claim against any other defendants for a violation of McAfee's Eighth Amendment rights.

Although the court has identified the deliberate indifference standard as the applicable standard, it may be that the malicious and sadistic standard of Whitley v. Albers, 475 U.S. 312 (1986), would apply due to the riotous circumstances prison officials faced that day. See Johnson v. Lewis, 217 F.3d 726, 733-34 (9th Cir. 2000). There is insufficient information for the court to determine which of the two standards will apply to plaintiff's claims, but for present purposes it is enough to note that the complaint states a § 1983 claim for an Eighth Amendment violation under either standard.

4

B.     Due Process Claims

A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983. See id. at 953. Liberally construed, the complaint states a due process claim against defendant Verdesoto for making false charges against McAfee, assuming that he is able to prove his allegations that he did not receive the required due process protections at the disciplinary hearing resulting from those charges. A claim is not stated against defendant Sevey (who signed Verdesoto's report as the reviewing supervisor) or against defendant Truett (who classified the offense as serious rather than administrative), as neither apparently did anything beyond looking at and signing the document prepared by Verdesoto.
See Complaint, Exh. C.

An inmate in California is entitled to due process before discipline is imposed that results in an atypical and significant hardship in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472, 484 (1995). The process due in such a prison disciplinary proceeding includes written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. Wolff v. McDonnell, 418 U.S. 539, 564-67 (1974). The findings of the prison disciplinary decision-maker must be supported by some evidence in the record, Superintendent v. Hill, 472 U.S. 445, 454 (1985), and there must be some indicia of reliability of the information that forms the basis for prison disciplinary actions, Cato v. Rushen, 824 F.2d 703, 704-05 (9th Cir. 1987). Liberally construed, the complaint states a § 1983 claim against defendant J. Rivero for due process violations. Rivero, the hearing officer on the disciplinary charge, allegedly denied a witness McAfee had requested, did not read the reports, and found McAfee guilty based on insufficient evidence. A claim is not stated against defendant

5

Tucker and Collie, who allegedly signed the disciplinary hearing officer's report but did not conduct the hearing. See Complaint, Exh. C.

McAfee also asserts claims related to the handling of his inmate appeals. Interests protected by the Due Process Clause may arise from two sources--the Due Process Clause itself and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). There is no constitutional right to a prison administrative appeal or grievance system. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). The State of California has not created a protected interest in an administrative appeal system in prison or the county jails. California Code of Regulations, title 15 sections 1073 and 3084.1 grant prisoners in the county jails and state prisons a purely procedural right: the right to have an administrative appeal. The regulations simply require the establishment of a procedural structure for reviewing prisoner complaints and set forth no substantive standards; instead, they provide for flexible appeal time limits, see Cal. Code Regs. tit. 15, § 3084.6, and, at most, that "no reprisal shall be taken against an inmate or parolee for filing an appeal," id. § 3084.1(d). A provision that merely provides procedural requirements, even if mandatory, cannot form the basis of a constitutionally cognizable liberty interest. See Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993); see also Antonelli, 81 F.3d at 1430 (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause). McAfee had no federal constitutional right to a properly functioning appeal system. An incorrect decision on an administrative appeal or failure to handle it in a particular way therefore did not amount to a violation of his right to due process. Warden Curry has no liability based on his failure to find in McAfee's favor on the administrative appeal.

Warden Curry also has no liability merely because he was in charge of the prison at which the riot occurred. Lastly, McAfee's conclusory allegations that various persons acted with a motive to cover up a hate crime and earlier misconduct do not state a claim upon which relief may be granted.

# CONCLUSION

For the foregoing reasons,

1. Plaintiff has stated cognizable § 1983 claims (1) against defendants Days, Hill, and Ingraham for a violation of his Eighth Amendment rights; (2) against defendant Verdesoto for a due process violation for falsifying a report; and (3) against defendant J. Rivero for due process violations in the disciplinary hearing over which he presided. All other defendants and claims are dismissed.

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, a copy of the complaint and this order upon the following defendants, all of whom apparently work at the Correctional Training Facility in Soledad:
   - correctional officer B. Hill
   - correctional officer Ingraham
   - correctional sergeant A. Days
   - correctional sergeant G. Verdesoto
   - correctional lieutenant J. Rivero

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

   a. No later than **May 7, 2010**, defendants must file and serve a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, they must so inform the court prior to the date the motion is due.

   b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendant no later than **June 11, 2010**. Plaintiff must bear in mind the following notice and warning regarding summary judgment as he prepares his opposition to any summary judgment motion:

   > The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
   >
   > Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end

7

your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. (See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998).

Plaintiff also should take note that defendants may file a motion to dismiss for failure to exhaust administrative remedies instead of or in addition to a motion for summary judgment. A motion to dismiss for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, result in the dismissal of the action. The plaintiff must "develop a record" and present it in his opposition in order to dispute any "factual record" presented by the defendants in their motion to dismiss. Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003).

   c. If defendants wish to file a reply brief, they must file and serve the reply brief no later than **June 25, 2010**.

  4. All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

  5. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

  6. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff is cautioned that he

8

must include the case name and case number for this case on any document he submits to this court for consideration in this case.

      7.      Any document plaintiff sends to the court for filing must be sent in an envelope addressed to the clerk, rather than addressed to the undersigned, so that the materials will reach the court file and be docketed.

      IT IS SO ORDERED.

Dated: February 9, 2010

_____
Marilyn Hall Patel
United States District Judge